```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
```

---

```
                                    )
   United States of America,        )  File No. 19-CR-103
                                    )         (MJD/ECW)
           Plaintiff,               )
                                    )
   v.                               )  Minneapolis, Minnesota
                                    )  September 24, 2019
   Relondo Devon Hall (2),          )  2:30 p.m.
                                    )
           Defendant.               )
```

---

BEFORE THE HONORABLE DAVID T. SCHULTZ
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
**(DETENTION HEARING)**

**APPEARANCES**

| | |
|---|---|
| For the Plaintiff: | **U.S. ATTORNEY'S OFFICE**<br>**JUSTIN WESLEY, AUSA**<br>300 S. 4th St., #600<br>Minneapolis, Minnesota 55415 |
| For the Defendant: | **HEGNA LAW OFFICE**<br>**TERRY HEGNA, ESQ.**<br>1626 Grotto St. N.<br>St. Paul, Minnesota 55117 |
| Court Reporter: | DEBRA K. BEAUVAIS, RPR-CRR<br>300 S. 4th St., #1005<br>Minneapolis, Minnesota 55415 |

Proceedings recorded by mechanical stenography; transcript produced by computer.

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURTROOM DEPUTY:  All rise.

THE COURT:  Go ahead and be seated.

All right.  Good afternoon.  We're on the record in the matter of the United States v. Relondo Devon Hall, Criminal No. 19-103.

Mr. Wesley, would you note your appearance for the record, please.

MR. WESLEY:  Justin Wesley for the United States government.

THE COURT:  Ms. Hegna.

MS. HEGNA:  Your Honor, my name is Terry Hegna, and I'm here this afternoon with Mr. Hall, who is seated to my left.

THE COURT:  Good afternoon, Ms. Hegna and Mr. Hall.

According to what I have in front of me, we are here for a detention hearing.  But also, Ms. Hegna, would you like to have your client arraigned today as long as you're available?

MS. HEGNA:  I would, Your Honor.

THE COURT:  All right.  Why don't we do the arraignment first, then.  Come on up.

All right.  Mr. Hall, would you state your full

1    name for the record, please.
2            THE DEFENDANT:  Relondo Devon Hall.
3            THE COURT:  And spell your last name, please.
4            THE DEFENDANT:  H-A-L-L.
5            THE COURT:  All right.  Your date of birth, sir,
6    is what?
7            THE DEFENDANT:  3-22 of '82.
8            THE COURT:  All right.  Mr. Hall, a superseding
9    indictment dated August 13 of 2019 has been filed against
10   you charging you with conspiracy to distribute controlled
11   substances, possession with intent to distribute controlled
12   substances, and being a felon in possession of a firearm.
13           Have you had a chance to see a copy of the
14   indictment?
15           THE DEFENDANT:  Yes, sir.
16           THE COURT:  Ms. Hegna, do you wish to waive
17   reading of the indictment?
18           MS. HEGNA:  Yes, Your Honor, we would waive the
19   reading and ask that the Court enter not guilty pleas on all
20   counts.
21           THE COURT:  All right.  Very well.
22           Mr. Hall, the Court will enter a plea of not
23   guilty to all six charges -- or seven charges of the
24   superseding indictment.  Okay?
25           THE DEFENDANT:  Yes, sir.

1           THE COURT:  All right.  Go ahead and be seated.  I
2    have some dates for you all to write down.
3           Government disclosures due date is October 1.  The
4    defendant's disclosures then are October 8th.  Motion filing
5    date is October 15.  And the motion response date is October
6    29.  Notice of intent to call witnesses, November 1.  And
7    the responsive notice deadline is November 4.  Motions will
8    be heard on November 5 at 9:30 in the morning before
9    Magistrate Judge Elizabeth Cowan Wright.  She is in
10   courtroom 3C in St. Paul.  Voir dire and jury instructions
11   will be due November 18th.  And trial is set for December
12   2nd at 9:00 a.m. before District Judge Michael J. Davis, and
13   he is in Courtroom 13E above us in this courthouse.
14          Okay?  Any questions about those dates or anything
15   relating to the arraignment?
16          MR. WESLEY:  No, Your Honor.
17          MS. HEGNA:  No, Your Honor, except that I would
18   note that Mr. Hall is only charged in three counts of the
19   indictment, not all of the counts.
20          THE COURT: Very well.  Thank you.  So noted.  A
21   not guilty plea will be entered on your behalf to all the
22   counts in the indictment that relate to you.  Okay?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  All right.  Mr. Wesley, how do you
25   intend to proceed with respect to detention?

1                    MR. WESLEY:  A brief proffer of information, along
2     with the information that's contained in the Pretrial
3     Services report.
4                    THE COURT:  Very well.  Why don't you go ahead,
5     Mr. Wesley.
6                    MR. WESLEY:  Your Honor, the first thing that I
7     wanted to clarify was from the initial appearance where
8     Ms. Atwal, who was representing the defendant at that period
9     of time, indicated that Mr. Hall was claiming he had turned
10    himself in.  I didn't mention anything at that time because
11    I thought the detention hearing would be more appropriate.
12                   I informed Ms. Atwal immediately after the hearing
13    that Mr. Hall was in fact arrested after a controlled buy.
14    He did not turn himself in.  I informed Ms. Hegna of that
15    when I learned she was appointed.  I provided her with the
16    underlying police reports indicating that was how he was
17    apprehended.  So I did want the Court to know he did not
18    turn himself in.  He was arrested on probable cause for a
19    new offense and then held on a misdemeanor warrant before he
20    appeared here.
21                   Your Honor, we are seeking detention.  I believe
22    that the Pretrial Services report does lay out the reasons
23    why that would be appropriate in this case; that no
24    condition or conditions would be sufficient to ensure his
25    appearance or public safety.  And the only other things I

1    would like to note for the Court are that the indictment
2    does allege serious allegations with significant time.
3            This investigation was initiated based on Mr. Hall
4    being the target.  It was an overdose death on December 22nd
5    of 2018 where Mr. Hall is alleged to have been the person
6    who provided the Fentanyl that resulted in the death of an
7    individual.
8            Mr. Hall was at an Airbnb, which is the result of
9    the January 24th, 2019 charges -- that's a short term but
10   extended stay-type situation -- where it's alleged that he
11   was dealing Fentanyl and heroin out of that, along with his
12   co-defendant, Mr. Abari.
13           He was later found in another residence with a
14   bunch of other Fentanyl and heroin users.  And during the
15   investigation we know that he's been in Las Vegas and
16   Florida, so we don't believe that he's ever had a permanent
17   residence during the time of this conspiracy.
18           So given the charges, given the Pretrial Services
19   report, Your Honor, the government does not believe that
20   there is any condition or conditions that would ensure his
21   appearance or public safety, specifically given the
22   Fentanyl, the overdose death in this case, and just the
23   sheer volume.
24           We tracked down their supplier who's indicted,
25   Kevin Green.  He alone had $200,000 in cash almost -- I

1  believe it was around 193,000 -- and 300 grams of a mixture
2  of Fentanyl and heroin.  Those numbers go up somewhat with
3  actual amounts for the grams that we obtained from Mr. Hall
4  and Mr. Abari and the cash that was seized from them as
5  well.  And then, of course, there's the firearms.  So that's
6  our basis for detention, Your Honor.
7            THE COURT:  Thank you, Mr. Wesley.
8            Ms. Hegna.
9            MS. HEGNA:  Thank you, Your Honor.
10           What you've just heard is the government's proffer
11 as to what they may be able to show during the course of
12 this matter.  At this point, that information has not been
13 available; although, Mr. Wesley has certainly provided me
14 bits and pieces.
15           I would note since Mr. Wesley indicated that
16 Mr. Hall was at the Airbnb when that search was done, it's
17 my understanding through a conversation with Mr. Wesley that
18 he was actually not present when that was done.
19           Having said that, Your Honor, it's our position
20 today that there are conditions that will assure Mr. Hall's
21 appearance and the safety of community.  The comments
22 regarding voluntary surrender -- I wasn't here, obviously,
23 on Friday, but I think in talking to Mr. Hall that's a
24 misunderstanding.  He knew he was arrested.  He was going to
25 pay the $78 warrant, and he tells me when he got to the

1  jail, he found out there was the federal warrant.  I said,
2  Well, you couldn't have left, could you?  And he said, No.
3  Well, I turned myself in.  Well, he was there already.  I
4  mean, he's not disputing those circumstances.
5  　　　　　Your Honor, I would make a further offer of proof.
6  As you can see in the back of the courtroom, Mr. Hall's
7  family is here today:  his mother, Deletta Hall; his three
8  children; a cousin; and a girlfriend; and there's some other
9  family members that were not identified to me before I came
10 in here.  He does have the support of his family, and I
11 think it's important that the Court consider that as it's
12 looking at all the other information.
13 　　　　　Mr. Wesley and I have discussed that we would
14 offer a proffer of what Deletta Hall is willing to testify
15 to today without her taking the stand.  Basically, she could
16 confirm the information in the bond report in terms of
17 Mr. Hall being her son.  He was born in Illinois, has been
18 in Minnesota for 25 years, very connected with his family.
19 　　　　　His mom lives at a residence on Central Avenue in
20 Minneapolis.  And she has indicated to me that although
21 that's a public housing residence and he can't live exactly
22 with her, that her hope would be that they would set up an
23 apartment in the basement with the consent of the landlord.
24 　　　　　Ms. Hall has -- her husband is in a nursing home.
25 The bond report says that he has died.  I guess that's

1  inaccurate.  Her other son has deceased.  She has no other
2  children, besides Mr. Hall.  She suffers from diabetes, as
3  well as some mental-health issues, and indicates that
4  Mr. Hall is her lifeline basically.  He helps her with
5  laundry, helps cook her food, helps put her medication in
6  pill boxes, takes care of her bills.  And she indicates that
7  he's never given her any trouble and also indicates that he
8  is a good father to his children.  She indicates that
9  without his help it's going to be a struggle for her, and
10 Mr. Hall wants to continue to provide that support.
11         She personally has never seen him with narcotics
12 or a gun.  And she believes that although he had some issues
13 early on in his life, that since he started working about
14 five years ago that he has done fairly well.  She can
15 indicate to the Court that the job he had at Tim Horton's
16 that the bond report says that he was laid off from in March
17 of '20 [sic], he worked for about three years.  He was a
18 baker at that business.  He also worked at SuperValu
19 warehouse for about a year and a half and worked at Marsden
20 cleaning.
21         I think all of that, Your Honor, kind of leads
22 into the Court considering and looking at the criminal
23 history that has been put forth.  If the Court looks at that
24 carefully, the last conviction that shows up, apart from the
25 February 28, 2019 arrest in Las Vegas, which was the

1    misdemeanor, but aside from that, there haven't been any
2    convictions, at least that I'm aware of, since 2010.
3                Mr. Hall indicates there was a period of time
4    where he did turn his life around and he was working hard
5    and taking care of his family, and that's what he wants to
6    do again.
7                When we look at the three factors that support a
8    finding that there are conditions -- I mean, we have to look
9    at the context of the bond report.  Just because somebody
10   has repeated contact with law enforcement doesn't
11   necessarily mean anything.  We don't know why Mr. Hall is
12   stopped repeatedly for his driving and traffic offenses, but
13   apparently that's one of the weaknesses that he has.  As I
14   look at the bond report, if my math is correct, there's 16
15   entries where he was arrested, but there were no charges or
16   disposition that resulted from those.
17               It also looks like many of the stops, as I
18   indicated, were traffic related:  driving after suspension,
19   false information to the police.  And, again, we don't
20   exactly know what the circumstances of those cases are.
21               Granted there are six active cases, but those are
22   all misdemeanors as I can tell from looking at -- again, at
23   the bond report.  Although there's two traffic matters that
24   have active warrants in Vegas, you know, it's my
25   understanding that they don't intend to extradite outside of

1  this jurisdiction.  So our hope would be that he could move
2  forward and try to get the pieces of his life back together.
3              The other thing that I think the Court has to give
4  serious consideration to is in the bond report one of the
5  factors was that he's been homeless for two years.  He may
6  or may not -- or no permanent address, excuse me; "homeless"
7  is my word.  The fact that he doesn't have a permanent
8  address in and of itself with all the family support he has,
9  the fact that he's been well connected with our community
10 for 25 years and wants to stay here, I think the fact that
11 he doesn't have his own address at this point shouldn't be
12 the factor.  As I indicated, his mom would testify that she
13 is working to provide him with a place to live.
14             Your Honor, it's our position that there are
15 conditions.  As the Court can see, Mr. Hall has had issues
16 with substance abuse over the course of his life.  I know he
17 told the worker in the bond report that he didn't think he
18 had a problem, but the Court can look at that, look at the
19 UA that was done at the time of his arrest, and he obviously
20 has some problems.
21             It would be our suggestion, Your Honor, that the
22 conditions that would assure his presence and would assure
23 the safety of the community would include releasing him on
24 some sort of home monitoring, having him do a Rule 25
25 assessment and following the recommendations of that,

1   finding employment, having no contact with the folks that
2   the government is concerned about, and allowing him to be a
3   productive member of society while this case is pending.
4             As I said, with the discovery not due for a week,
5   it's hard to decide how this case is going to be handled.
6   Just because we hear this is a drug offense and we hear
7   guns, we still have to evaluate the circumstances of what we
8   know at this point.  And, as I said, apart from a
9   misdemeanor controlled substance, there haven't been any
10  convictions that I'm aware of since 2012.
11            If the Court is disinclined to allow him to simply
12  go to his mom's house or somewhere, we would ask that he be
13  allowed to reside in a halfway house while this is pending
14  with the electronic monitoring.  That would provide an extra
15  level of comfort for the Court and the government, and he
16  can still participate in treatment and whatever was
17  determined to be appropriate for him.  He'd be accountable
18  to the rules of the halfway house, and he indicates that he
19  is willing to do that if the Court wants that extra level of
20  supervision.
21            The last comment I would have, Your Honor, is on
22  the risk assessment that comes in the bond reports as of
23  late, it's an assessment.  It doesn't tell us what the risk
24  for any of the behaviors it looks at are going to relate to
25  this particular defendant.  Rather than looking at 35

1    percent in a category V are going to fail to appear, have
2    new criminal cases or technical violations, we can also look
3    at it as 65 percent of folks are not going to be in that
4    category.  And, in any event, it doesn't predict the risk
5    for this particular defendant, which I think the Court has
6    to do when it's taking a look at whether there are
7    conditions that exist.
8              So with that, Your Honor, we would strongly urge
9    the Court to find that there are conditions, and that
10   Mr. Hall is willing to follow them.  And any concerns that
11   might've been expressed on Friday, part of that had to do
12   simply with the process moving so quickly and not having the
13   time to talk in detail with an attorney.
14             I'm comfortable, Your Honor, if the Court were to
15   fashion an order, that there are conditions that would
16   assure the safety of the community and Mr. Hall's appearance
17   before this Court.
18             Thank you, Your Honor.
19             THE COURT:  Thank you, Ms. Hegna.
20             Mr. Wesley, I'll give you the final word.
21             MR. WESLEY:  Just a clarification if I did
22   misspeak.  Mr. Hall was not present at the January 24th
23   search warrant, but he is the one that had secured the
24   Airbnb.  And the government has information that both
25   Mr. Hall and Mr. Abari had been selling large amounts of

1       Fentanyl out of that apartment building.
2                At the time of the execution, Mr. Abari was
3       present; Mr. Hall's daughter, Desiree Hall, was present, who
4       I believe is in the courtroom here today, if I recognize her
5       properly from photos I've seen; and then her boyfriend was
6       also present with 100 grams, approximately, of heroin out
7       being packaged on the kitchen table.
8                While I'm not a fan of calling witnesses at these
9       types of hearings, Your Honor, based on discovery not being
10      provided, I did speak with Ms. Hegna yesterday and previewed
11      her, basically, the timeline of the case that we do have.
12      And I do have one of the case agents present here, and I can
13      proffer to the Court that we do have a very strong case.
14               The evidence is that Mr. Abari and Mr. Hall were
15      equally dealing large amounts of Fentanyl and heroin
16      unbeknownst to their users that Fentanyl was contained in
17      the heroin.  They were selling it as only heroin.
18               There is one death involved.  There are shootings
19      involved in this case where Mr. Hall and Mr. Abari are
20      implicated where persons were actually shot.  Threats were
21      made not by Mr. Hall, but by Mr. Abari.  And there's lots of
22      other things going on with this case.  But the government
23      does believe that the bond report itself, the severity of
24      these charges, the weights, the money that's involved, and
25      the fact that even after Mr. Abari and Mr. Green were picked

1    up, Mr. Hall is out there conducting controlled buys.  It's
2    not just the last one that he was picked up on, but he was
3    selling methamphetamine.  We have a phone of his where he
4    was Googling "how do I get Fentanyl" because his source was
5    cut off.
6              So the government does not believe that there are
7    any conditions, such as a halfway house, where Mr. Hall
8    would discontinue the behavior that he is engaged in that
9    does endanger the public safety or assure his appearance in
10   court.
11             Thank you.
12             THE COURT:  All right.  Thank you, Mr. Wesley.
13             This is a rebuttable presumption case, correct,
14   Mr. Wesley?
15             MR. WESLEY:  I believe so, Your Honor.
16             THE COURT:  Okay.  All right.  I have considered
17   everything in the Pretrial Services report and the proffer
18   of both the government and the defense in this case, and I'm
19   going to find that the defendant has not rebutted the
20   presumption in this case for all the reasons that are cited
21   in the Pretrial Services report.
22             I cannot find that there's any set of conditions
23   that I can impose that will reasonably assure Mr. Hall's
24   appearance at further court proceedings or reasonably assure
25   the safety of the community.  So my order is that pending

1  trial in this matter Mr. Hall will be detained.
2              Anything further for the government, Mr. Wesley?
3              MR. WESLEY:  No, Your Honor.  Thank you.
4              THE COURT:  Anything further for the defendant,
5  Ms. Hegna?
6              (A brief discussion was held off the record.)
7              MS. HEGNA:  No, Your Honor, not today.
8              THE COURT:  All right.  Thank you.  Court is in
9  recess.
10             Good luck to you, Mr. Hall.
11             THE COURTROOM DEPUTY:  All rise.
12             (Court adjourned at 3:00 p.m.)
13                          *    *    *
14        I, Debra Beauvais, certify that the foregoing is a
15 correct transcript from the record of proceedings in the
16 above-entitled matter.
17             Certified by:  *s/Debra Beauvais*
                              Debra Beauvais, RPR-CRR
18
19
20
21
22
23
24
25