```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2

 3      ------------------------------------------------------------
                                    )
        UNITED STATES OF AMERICA,    )   File No. 19-cr-103
 4                                   )            (MJD/ECW)
                Plaintiff,           )
 5                                   )
        vs.                          )   Saint Paul, Minnesota
 6                                   )   December 4, 2019
        ANTHONY AKEMU ABARI (1),     )   9:37 a.m.
 7      RELONDO DEVON HALL (2),      )
        KEVIN GREEN (3),             )
 8                                   )
                Defendants.
 9      ------------------------------------------------------------

10            BEFORE THE HONORABLE ELIZABETH COWAN WRIGHT
             UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
11                       (MOTIONS HEARING)

12      APPEARANCES
          For the Plaintiff:        UNITED STATES ATTORNEY
13                                  JUSTIN A. WESLEY, AUSA
                                    AMBER M. BRENNAN, AUSA
14                                  300 South Fourth Street
                                    Suite 600
15                                  Minneapolis, Minnesota 55415

16        For Defendant Abari:      MATTOX LAW OFFICE
                                    RICK E. MATTOX, ESQ.
17                                  16670 Franklin Trail SE
                                    Suite 250
18                                  Prior Lake, Minnesota 55372

19        For Defendant Hall:       RIVERS LAW FIRM, P.A.
                                    BRUCE M. RIVERS, ESQ.
20                                  701 4th Avenue South
                                    Suite 300
21                                  Minneapolis, Minnesota 55415

22        For Defendant Green:      ROGOSHESKE SIEBEN & ATKINS, PLLC
                                    PAUL W. ROGOSHESKE, ESQ.
23                                  105 Hardman Court
                                    Suite 110
24                                  South St. Paul, Minnesota 55075

25
```

1      Court Reporter:              CARLA R. BEBAULT, RMR, CRR, FCRR
                                    Suite 146 U.S. Courthouse
2                                   316 North Robert Street
                                    Saint Paul, Minnesota 55101
3

4

5

6

7          Proceedings recorded by mechanical stenography;
       transcript produced by computer.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2   GOVERNMENT EXHIBITS                                    REC'D
    Exhibit 7                                             50
3   Exhibit 8                                             53

4
    GREEN EXHIBITS                                        REC'D
5   Exhibit 1                                             55
    Exhibit 2                                             55
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **P R O C E E D I N G S**

2            **IN OPEN COURT**

3

4          THE COURT:  All right.  Good morning, all.  We are

5    here today for a criminal motions hearing in the matter of

6    United States versus Abari, case number 19-cr-103.  If

7    counsel could make their appearances for the record,

8    beginning with counsel for the Government.

9          MR. WESLEY:  Justin Wesley and Amber Brennan for

10   the United States Government, Your Honor.  We also have task

11   force officer Sergeant Peterman and Officer Evans from the

12   Minneapolis Police Department who are ATF task force

13   officers.

14          THE COURT:  All right.  Good morning to you.

15          And for the Defendant, beginning with Mr. Abari.

16          MR. MATTOX:  Good morning, Your Honor.  Rick

17   Mattox for Mr. Abari.  He is present.

18          THE COURT:  All right.  Good morning.

19          And for Mr. Hall.

20          MR. RIVERS:  Bruce Rivers on behalf of Mr. Hall

21   who is present as well.

22          THE COURT:  Okay.  Good morning to both of you.

23          And finally for Mr. Green.

24          MR. ROGOSHESKE:  Paul Rogosheske with Mr. Green,

25   Your Honor.

1              THE COURT:  All right.  Good morning.

2              Now, we have several motions before us on behalf

3    of all three defendants, so some of them I imagine will

4    require testimony based on the fact that the government has

5    witnesses here.

6              MR. WESLEY:  Your Honor, the Government did not --

7    does not intend on calling any witnesses.  Mr. Mattox did

8    subpoena Officer Brandon Noble to testify at this hearing.

9    I would like to address that issue before Officer Noble is

10   called.  I don't think that the Court has ruled on the

11   *Franks* issue, which I believe would be the primary purpose

12   for Mr. Mattox attempting to call Officer Noble.

13             THE COURT:  All right.  Why don't we do this,

14   Mr. Wesley.  Why don't we proceed through the non-testimony

15   motions, so to speak, for each defendant so we can get those

16   taken care of; and then I will hear argument on the

17   propriety of the subpoena to Officer Noble at that time.

18             Mr. Mattox and Mr. Wesley.

19             MR. MATTOX:  Your Honor, the Court has heard a

20   number of our motions before, and I'm not going to address

21   those other than to say that we filed new motions for

22   disclosure of informants and cooperating witnesses.  I've

23   literally gotten 10,000 electronic pages in this case with

24   no directory, there's no -- so I numbered them myself.  I

25   have gone through them all, and I find very little evidence

1    involving the informants or co-witnesses or codefendants.

2           And I'm also requesting the grand jury transcripts

3    as well.

4           THE COURT:  Let me just stop you there.  We're

5    talking about the motions -- I think it's 102, 103 and 104?

6           MR. MATTOX:  Right.

7           THE COURT:  All right.  Mr. Wesley, why don't you

8    come on up and we can walk through these and then get to the

9    issue of the subpoena.  Mr. Mattox, if you could stay up

10   here, we can walk through them, all three of them.  So we're

11   not calling witnesses right now.

12          MR. MATTOX:  I'll step aside.

13          THE COURT:  I'm going to ask you to come on up to

14   the podium, Mr. Mattox, with Mr. Wesley.  We'll just go

15   through them one by one.

16          So let's talk about docket number 102, which is a

17   Motion for Disclosure of Grand Jury Transcripts.  I

18   understand that you're seeking disclosure of the grand jury

19   transcripts, and I've reviewed the Government's opposition

20   so I take it there's still a dispute with respect to this

21   motion.

22          MR. MATTOX:  Yes, Your Honor.  Let me explain why

23   we're seeking that.  I know very little, hardly anything,

24   about the events or the information that led up to the

25   January 24th search warrant.  Obviously I've read the search

1       warrant and I understand that in the original grand jury

2       presentation Mr. Abari was indicted singly by himself.

3       Obviously there's discussion about Mr. Abari at that time.

4              I believe there have been discussions, again, this

5       is my belief, there's more discussions about his role in the

6       offenses; and I note that in the criminal complaint in

7       Hennepin County, which is noted in my motion at the *Franks*

8       hearing, that he wasn't -- he was charged the next day,

9       January 25th, and he was alleged to be the target of the

10      search warrant.  From what I understand, the Government had

11      no information about Mr. Abari at all prior to entering the

12      home on -- Airbnb on January 24th.  That's my understanding.

13             I want to find out why they decided to charge him

14      when he's not part of that conspiracy that they are looking

15      into back on January 24th.  I think the testimony at the

16      grand jury would help us learn that.  And that goes also to

17      my request for informants later on, Your Honor.  But we need

18      that -- I have had multiple conversations with Mr. Abari

19      about that.  He's requesting that.  It's important to us to

20      find out what the Government told the grand jury when I

21      don't know any of the evidence.

22             THE COURT:  Okay.

23             MR. MATTOX:  And I have been told now there might

24      not be any police reports about the events that led up to

25      the search warrant on January 24th.

1          THE COURT:  Okay.  Thank you.

2          Mr. Wesley.

3          MR. WESLEY:  Your Honor, as the Government has

4     stated at earlier hearings, as I've reiterated to Mr. Mattox

5     repeatedly in person and over the phone, as I will again

6     reiterate to the Court, the state search warrant is

7     irrelevant to our proceeding right now.  It appears to be a

8     typo.  Sergeant Biederman testified at an earlier motions

9     hearing that no one knew who Mr. Abari was until they

10    executed the warrant and found him laying on a gun next to

11    the kitchen counter with approximately 100 grams of heroin

12    with fentanyl being packaged for sale.

13         THE COURT:  Executed which warrant?  The state

14    search warrant at issue?

15         MR. WESLEY:  On the January 24th, 2019 search

16    warrant at 410 Sixth Street Southeast.

17         THE COURT:  And is that the one with a typo or is

18    that a separate search warrant?

19         MR. WESLEY:  The warrant itself I don't believe

20    has a typo, Your Honor.

21         THE COURT:  Okay.

22         MR. WESLEY:  The typo is in the state complaint

23    where it says -- one of the first lines I believe in the

24    state complaint, which the United States Attorney's Office

25    has nothing to do with, indicates that Mr. Abari was the

1    target.  I believe it was a simple -- the officer simply

2    overlooked that when signing the complaint.  The Government

3    is not alleging that Mr. Abari was the target prior to

4    January 24th.

5            And so I think some of Mr. Mattox's frustration

6    stems from the fact that he thinks that we have some case

7    file on Mr. Abari prior to January 24th when we simply do

8    not.  During this investigation -- he obviously has a prior

9    federal case before this -- but as part of this

10   investigation, he was not on anyone's radar until they

11   executed the January 24th warrant and found him there with

12   the heroin and the gun.

13           THE COURT:  Okay, so let me -- I just want to make

14   this very clear for myself because in reviewing the papers

15   there's been discussion of a state search warrant and a

16   state court complaint, and so I just heard someone talk

17   about a state search warrant, which I think perhaps they

18   meant the complaint.  So the reference to Mr. Abari,

19   Mr. Mattox, that you're talking about, is it in a complaint

20   or the warrant?

21           MR. MATTOX:  It's in the complaint.

22           THE COURT:  It's in the complaint.

23           And you agree?

24           MR. WESLEY:  I agree, Your Honor.

25           THE COURT:  Okay.  Thank you.

1          All right.  Is there anything additional that

2     either of you would like to say about this docket number

3     102, the disclosure of grand jury transcripts, right now?

4          MR. WESLEY:  I addressed everything in the

5     Government's document 112.  I don't have anything further to

6     add.

7          THE COURT:  Okay.

8          MR. MATTOX:  The grand jury met multiple times, as

9     I understand it, Your Honor, I expect because it was a

10     superseding indictment.  So the grand jury had to meet for

11     the superseding indictment.  And at the superseding

12     indictment Mr. Abari was indicted on one count involving a

13     search on April 14th of this year where he was in a

14     residence in South Minneapolis with multiple other people,

15     Your Honor, including, we think, perhaps the informant for

16     that search warrant.

17          I'm looking for that information as well, Your

18     Honor.  They -- I think ten people were taken into custody.

19     Only Mr. Abari was charged with it originally, and I believe

20     Mr. Hall was later, Your Honor.  I believe Mr. Hall was

21     released.

22          So I think that that's relevant -- who the

23     informant was on April 14th is relevant as well because I

24     don't know who it was.  It sounds like it's a codefendant,

25     Your Honor, based on what I know, but I'm speculating

 1     here -- again, I have no police reports involving that

 2     search warrant on the 14th of April prior to the search

 3     itself.

 4              I can't imagine that there would be no reports,

 5     Your Honor, about either search warrant prior to the

 6     searches themselves.  That might be a good remedy in lieu of

 7     having a *Franks* hearing, but I certainly am entitled to

 8     discovery about that and I've gotten none.  Mr. Wesley seems

 9     to suggest that there are no police reports prior to those

10     two searches, which strikes me as being very odd.

11              THE COURT:  Mr. Wesley, is that correct?

12              MR. WESLEY:  There -- so to clarify a few things,

13     Your Honor, the discovery has been provided as it relates to

14     the execution of both the warrant on January 24th at the

15     apartment and April 14th at the residence.  The discovery

16     consists of the application for the warrant, the affidavit,

17     the warrant itself, and the returns.  It also consists of

18     all the officers' reports summarizing their involvement in

19     the execution of the warrant and what they did.

20              Mr. Mattox is looking for reports preceding the

21     dates of the actual execution of the search warrant.  I've

22     informed him that based on my experience of over ten years

23     as a state prosecutor, and from actually speaking with

24     Officer Noble requesting if he had any reports predating

25     January 24th, that I don't believe the officers have any

1    reports predating that date.

2         What they do is they include the information in

3    the affidavit for the search warrant, which has been

4    provided to Mr. Mattox, and then they present that to the

5    state court judge; and then when they execute the warrant,

6    they write the reports about the investigation and what

7    happened.  And all of that has been disclosed to Mr. Mattox.

8         MR. MATTOX:  Your Honor, I can tell the Court in

9    my six years as a state court prosecutor, we got police

10   reports before search warrants were issued.  The law

11   enforcement provides information to the county attorney's

12   office and in some fashion the search warrants are drafted.

13   I can't imagine that there are no police reports involving

14   either search.

15        And in my over 40 years as a defense attorney, I

16   say that to the Court again.  There are almost always police

17   reports about these search warrants and I don't understand

18   why there are not.  Clearly it might be rough notes, and if

19   that's it, let's have the rough notes unless they have been

20   destroyed already, Your Honor.  It's illogical and

21   unprofessional not to have police reports when you're

22   looking for a search warrant.

23        THE COURT:  All right.  Here's what I'll do with

24   respect to this motion.  Mr. Wesley, why don't you check and

25   make sure there are no police reports and have a

1    conversation with Mr. Mattox about it after this, a

2    follow-up meet and confer.

3           And then if, Mr. Mattox, you still are seeking

4    information, either police reports if there are some, or if

5    there aren't and you don't believe that there aren't any, or

6    whatever the additional information is, you can submit a

7    supplemental brief clearly articulating what it is that you

8    want and the legal basis for it.

9           MR. MATTOX:  Okay, thank you.

10          THE COURT:  So that I can make an informed ruling.

11   Thank you.

12          So if you can perhaps meet and confer, I'll give

13   you a deadline, you know, I'll give you a deadline of -- do

14   you think you can have that investigation completed and meet

15   and confer within one week of today, Mr. Wesley?

16          MR. WESLEY:  I can, Your Honor.  I have already

17   spoken with Officer Noble.  I just need to follow up with

18   Deputy Marshall from the sheriff's office.

19          THE COURT:  Okay.  So you will meet and confer

20   with Mr. Mattox and let him know the results of your

21   investigation by Wednesday, December 11th.  And the fact

22   that I'm ordering this investigation and meet and confer is

23   not prejudging any ruling.  Mr. Mattox, if whatever you hear

24   on the 11th doesn't satisfy you, you can file a supplemental

25   brief one week later on the 18th; and I will then permit the

1      Government one week to reply if it wants to.

2                So the 11th is the deadline to meet and confer;

3      the 18th would be the deadline for Mr. Mattox's brief; and

4      the 25th would be the deadline for an opposition by the

5      Government.

6                Does that also cover the next motion that you

7      brought, Mr. Mattox, 103?

8                MR. MATTOX:  Excuse me?

9                THE COURT:  That's the motion for disclosure of

10     informants and cooperating witnesses.

11               MR. MATTOX:  Yes, Your Honor.

12               THE COURT:  Okay.

13               MR. MATTOX:  But that goes beyond that, though,

14     because as I understand in conversations with the

15     Government, they have been forthcoming that there are a

16     number of potential cooperating witnesses -- codefendants, I

17     suspect, informants -- and I was going to be provided a

18     summary of that information, which I -- we talked about,

19     Mr. Wesley and I talked about that on Monday so it's pretty

20     quick to have it done today, Your Honor.

21               But I would like to see that because I'm looking

22     at this case and I have the indictment, the superseding

23     indictment, but I have nothing to connect these three

24     individuals to each other.  In other words, I have no

25     evidence showing a conspiracy.  I suspect in conversations

1    that I've had with a variety of people that that conspiracy

2    proof will be offered by codefendants, maybe unindicted

3    codefendants, by cooperating witnesses, by informants.  And

4    I know that we may get this information three days before

5    trial.  I have a single investigator.  I have no idea how

6    many codefendants, cooperating witnesses there are, that we

7    could find in the three days before the trial starts, Your

8    Honor.

9         I think I have a due process -- my client has a

10   due process right to proper discovery so we can adequately

11   investigate it, and that's what I'm looking for.  I can't

12   give him good advice about this case until I find out what

13   this case involves.

14        THE COURT:  So you're looking for the identities

15   of these cooperating witnesses?

16        MR. MATTOX:  At some point, yes, but certainly I'm

17   looking for a summary of the evidence.

18        The reason I bring this up is, coincidentally, on

19   Friday of this week the Federal Public Defender is putting

20   on a CLE.  One of the topics is "Our Way of Life is Under

21   Attack in Pretrial Hearings."  And looking at the synopsis

22   that seems to me that that fits what's happening here.  If I

23   can't get adequate discovery until three days before trial,

24   that's not fair to my client.  And it seems to be a problem

25   beyond just my case if the Federal Public Defender is

1      putting a CLE on about it, Your Honor.

2             THE COURT:  As you know, Mr. Mattox, I am

3      obligated to follow the laws set forth by the Eighth Circuit

4      and the Supreme Court, right?

5             MR. MATTOX:  Well, due process trumps that, Your

6      Honor.

7             THE COURT:  All right.  Well, we can set that to

8      the side, but I understand your concerns.

9             Mr. Wesley, it sounds like you have agreed to

10     provide a summary; is that correct?

11            MR. WESLEY:  Yes, Your Honor.  And just so the

12     Court knows, I've provided our legal stance, what the United

13     States Supreme Court, the Eighth Circuit has ruled on Jencks

14     and informant identities and I stand by that.

15            I do want the Court to know that the Government

16     normally -- or this particular prosecutor normally would

17     normally turn over the Jencks material much earlier.  But as

18     I stated at earlier hearings, Mr. Abari himself, we have

19     information, has made credible threats against particular

20     persons in this case.  That is the primary reason that the

21     Government has not turned over the Jencks materials at this

22     point.

23            Mr. Mattox and I did speak on Monday and he

24     expressed to me his frustration and what he believes is a

25     lack of connection in the conspiracy, and so I have agreed

1    to provide him a general summary of what the one or many

2    witnesses we do have have indicated is Mr. Abari's

3    activities between December of 2018 and July of 2019, which

4    is the duration of the conspiracy here.

5            I would also note for the Court that we have

6    provided massive amounts of discovery to the defense

7    attorneys, and I have had numerous phone calls with all

8    three of them giving them the highlights and where to look

9    for things.  I've reiterated numerous times to Mr. Mattox

10   that the phones of Mr. Abari, Mr. Hall and Mr. Green provide

11   the evidence for the conspiracy.  So there is evidence in

12   his possession already that demonstrates the three of them

13   working together to sell heroin laced with fentanyl.

14           So I just wanted to clarify that statement because

15   I believe Mr. Mattox could be leaving the Court with the

16   impression that I haven't given him anything to justify a

17   conspiracy charge.

18           THE COURT:  Okay.  Mr. Mattox, it sounds like you

19   need to at least see the summaries that are provided.

20           MR. MATTOX:  Yes, Your Honor.  A summary of the

21   threats, too, Your Honor.

22           THE COURT:  Pardon me?

23           MR. MATTOX:  Including a summary of the alleged

24   threats, as well.

25           THE COURT:  Mr. Wesley.

1          MR. WESLEY:  I will provide a summary, Your Honor,

2     of what I believe will not put any of the witnesses in

3     danger, and I'll provide that to Mr. Mattox.  I can do that

4     by the 11th deadline as well.

5          THE COURT:  All right.  So same process for that,

6     Mr. Mattox.  You'll get the summaries of the cooperating

7     witness information and the alleged threats, and you'll get

8     that on the 11th.  And then if you still think you want more

9     information, same procedure, file something on the docket.

10    Explain what it is you want specifically and provide the

11    legal authority for it, and I'll give the Government a week

12    to respond.  So the 11th, the 18th, the 25th.

13         MR. MATTOX:  Thank you, Your Honor.

14         THE COURT:  Let's turn to the *Franks* issue, the

15    motion for a *Franks* hearing.  Does this need to be addressed

16    in connection with the subpoena to Officer Noble then,

17    Mr. Wesley?

18         MR. WESLEY:  I believe so, Your Honor.

19         THE COURT:  All right.  Then why don't we do this.

20    It seems that I need to decide the propriety of the subpoena

21    to Officer Noble first.  So, Mr. Mattox, you can sit down.

22    I'll let Mr. Wesley make a formal argument, and then I'll

23    hear from you, Mr. Mattox.  All right?

24         MR. WESLEY:  Your Honor, from reading Mr. Mattox's

25    filings and from also speaking with him, I am under the

1     belief that he intends to call Officer Noble for a variety

2     of reasons that relate to *Franks* issues.  His intention is

3     to call Officer Noble to demonstrate that there

4     were falsities in the application for the search warrant.

5     And as Your Honor noted in your report and recommendation,

6     it is a high burden for the defense to make a showing that

7     there is a need for a *Franks* hearing.  Not only do falsities

8     need to be demonstrated, either intentional falsities or

9     reckless disregard for falsities in the application, but

10    they also need to be necessary to the determination of

11    probable cause and essentially be material to that

12    determination.

13          So based on the filings that Mr. Mattox has made,

14    none of those issues are -- whether they are falsities or

15    not, they are not material.  And so calling Officer Noble to

16    bootstrap the *Franks* issue I think is premature.  I think

17    the Court can rule that he hasn't met the showing for the

18    *Franks* hearing, because what he's trying to do is trying to

19    call Officer Noble to demonstrate the grounds to establish

20    the need for a *Franks* hearing.

21          I believe I noted it in one of my responses, but

22    Mr. Mattox is indicating things like Officer Noble tried to

23    mislead the Court by not presenting two photographs.  One of

24    the photographs that Mr. Mattox used to demonstrate his

25    argument was taken after the execution of the search

1    warrant.  It would be impossible for Officer Noble to let

2    the judge -- the issuing judge of the warrant know about

3    this picture when it hadn't even been taken yet.  So there

4    are just numerous things like that that Mr. Mattox is basing

5    this on that --

6              (Disruption in the courtroom.)

7              THE COURT:  Mr. Abari, you need to respect the

8    Court; and, Mr. Mattox, I'm going to look to you to make

9    sure that happens.

10             MR. WESLEY:  I just give that to the Court as one

11   example of essentially, Your Honor, and respectfully

12   frivolous reasons for the *Franks* hearing.

13             So I would ask the Court to deny the request for

14   the *Franks* hearing because the defense has not made that

15   substantial showing for the need in demonstrating that, one,

16   there are falsities; or two, that they are material or

17   necessary to the determination of probable cause.

18             THE COURT:  Okay.  Thank you.

19             All right.  Mr. Mattox.

20             MR. MATTOX:  Your Honor, the photograph that the

21   Government is claiming that wasn't material is the

22   photograph of the actual headboard in the bedroom of the 110

23   Airbnb which contrasts with the headboard that I understand

24   the Government was using in preparation of the search

25   warrant.  In other words, they are different headboards.

1          THE COURT:  If one of the photographs was taken

2     after the search warrant was executed --

3          MR. MATTOX:  Right.  To show the real headboard,

4     Your Honor.  I'm trying to contrast the headboard that

5     wasn't in the Airbnb that was used to get the search

6     warrant, as I understand it, versus the actual headboard.

7     It's direct evidence that it was a different photograph of a

8     different place.

9          THE COURT:  But how -- I don't understand how a

10    photograph taken after the search warrant was signed and

11    executed is relevant to what Officer Noble did or didn't

12    know.  The question is his intent or whether he was -- made

13    a statement with reckless disregard for the truth.

14         MR. MATTOX:  Your Honor, as I understand it -- and

15    again, I'm trying to get the reports to see if I'm correct

16    about this -- as I understand it, Officer Noble saw a

17    photograph of a headboard that he used in a Facebook -- that

18    he used to suggest that this particular Airbnb at 110 was

19    the source of drugs, and he used this photograph to confirm

20    that.  But it's a photograph from a different location, Your

21    Honor.

22         Second of all, this is an Airbnb --

23         THE COURT:  But did he know that?  I mean, how is

24    the photograph that you have evidence of what his intent

25    was?

1          MR. MATTOX:  Because he didn't know where that

2     photograph came from, yet he used it anyway.  It's an

3     Airbnb.  It's a rental place.  He didn't know who was

4     renting the place on the 23rd of January or on the 24th of

5     January.  He didn't know that, Your Honor.

6          So -- and again, that's one of the reasons I was

7     trying to get the police reports to see what was going on

8     and what he knew.  And I would submit, perhaps, that

9     whatever police reports are available should be given to us,

10    we might not need the *Franks* hearing; but I'm lacking

11    discovery and it's very difficult, very difficult, to argue

12    this issue when I don't get discovery, Your Honor.

13          THE COURT:  Okay.  So let me back up because I

14    guess the first question I have for you with respect to the

15    subpoena is why you wanted Officer Noble to testify today.

16          MR. MATTOX:  I wanted Officer Noble to tell this

17    Court what he did in the few days before the January 24th

18    search warrant because I have no information what he did

19    then.  Clearly he did the dog search.

20          The dog search is an issue that the Court has said

21    may be complementary to the probable cause for the search

22    warrant, but he conducted a search of a hallway of a locked

23    building without a search warrant.  And in conversations

24    about the body cam, I'm now told he didn't wear a body cam

25    because he had a civilian right not to do that.  He didn't

1     want to let the people know what was going on.

2          But I would suggest two white males, older white

3     males with a dog going into an apartment building is not

4     something typical, and by its nature shows a dog sniff going

5     on.  So I don't believe that reason why he didn't wear a

6     body cam, Your Honor.

7          Again, I've seen no reports.  We've gotten

8     discovery about the dog Winnie (phonetic) who Judge Tunheim

9     found fault with in terms of the dog's credibility as a dog

10    sniff in a prior case that was assigned to the Court.  I was

11    provided with no information about that dog, that dog's

12    credibility, before we started these motions.  So I think

13    for a variety of reasons the dog sniff is suspect because

14    it's an illegal search.

15         Now, going to the other things involved, the

16    tipster.  Mr. Abari is a significant looking person, Your

17    Honor.  There's no evidence I know of that Mr. Abari was

18    seen there on the -- before the 24th of January.  The

19    Government now admits that, apparently, today.

20         I don't know what was going on.  This is a -- as I

21    argued before to the Court, this is a college-area facility.

22    It's a rental place.  We don't know who was renting it.  No

23    effort was made to show that, that I am aware of.  And for

24    all those reasons, Your Honor, I think we need a *Franks*

25    hearing to ask Officer Noble under oath what he did to

1    verify the information that he presented to the state court

2    judge, Your Honor.

3            THE COURT:  Okay.  You know what I'm struggling

4    with, Mr. Mattox, frankly, if you will excuse the pun, is

5    that it sounds like the purpose of the subpoena to Officer

6    Noble is indeed to establish either the basis for a *Franks*

7    hearing or to in fact have a *Franks* hearing here today,

8    which is a motion that I have previously denied that is, I

9    think, on appeal to Judge Davis right now, and there's

10   another pending motion that's been brought.  And when I hear

11   the scope of the testimony that you're proposing, it doesn't

12   relate to any of the potential motions or motions that are

13   before me, for example, for the -- other issues in the case,

14   shall we say.

15           And I am not aware of any authority under the law

16   that I'm bound to follow that permits me to have an officer

17   come in and testify about whether or not his statements were

18   false before I found that a *Franks* hearing is warranted.

19   That's what I'm really struggling with here, and I don't

20   know if there's some authority you can point me to.  I

21   understand your concerns, but I'm just not aware of any

22   basis for this.

23           And when I issued the subpoena, which as you know

24   I issued, I was not fully aware, perhaps, of the scope of

25   the testimony that you were proposing based on the pleadings

1    that had been submissions to the Court.  So if you're aware

2    of law that allows me to sort of have this type of testimony

3    to support the need for a *Franks* hearing, I would be very

4    interested in that.

5           MR. MATTOX:  Your Honor, it may come with the

6    disclosures about the prior reports.

7           THE COURT:  Um-hum.

8           MR. MATTOX:  Because I think that we have a right

9    then to argue to this Court that because there are no police

10   reports, if that's the case, that the officer was being --

11   not properly doing his job making reports that we could

12   verify this and to avoid a *Franks* hearing.  If there are no

13   police reports, I think we are entitled to a *Franks* hearing

14   to ask the officer directly what he did.

15          THE COURT:  All right.  What I'm thinking is it

16   seems right now that Officer Noble's testimony today is both

17   disputed by the Government; and you're bringing a motion to

18   quash, I understand, the subpoena?

19          MR. WESLEY:  Yes, Your Honor.

20          THE COURT:  All right.  And also in fact may be

21   premature because we're going to go through this process

22   where you're going to get more discovery and now you have

23   hard deadlines for getting that.

24          So what I'm inclined to do right now is to quash

25   the subpoena with respect to the proposed scope of testimony

1    for today because I understand that you're intending to get

2    testimony from Officer Noble that relates to either *Franks*

3    arguments or arguments to support a *Franks* hearing, without

4    prejudice to your ability to bring a new -- seek a new

5    subpoena if after you get the disclosures you think

6    that's -- you still think it's warranted.

7                 MR. MATTOX:  Okay.

8                 THE COURT:  In view of your statements that

9    perhaps you would not need a *Franks* hearing if you were able

10   to get this additional discovery.

11                MR. MATTOX:  Very true, perhaps, Your Honor.  I

12   don't know what the additional discovery is.  That's the

13   problem.

14                THE COURT:  I understand your concerns.  I do.

15                So I'm going to go ahead and grant the motion of

16   the Government to quash the subpoena for the purposes of

17   this hearing, and then moving forward you will have the

18   disclosures.  And to the extent you do seek to have Officer

19   Noble come in and testify again, it is important to me that

20   I have the -- that you establish that I have the authority

21   to do what you're asking me to do, whether it's in the form

22   of a pre *Franks* hearing or something else, but that would be

23   very helpful to me in making my decision.

24                MR. MATTOX:  Thank you, Your Honor.

25                THE COURT:  Okay.  Thank you, Mr. Mattox.

1        And so I think that covers all three of

2    Mr. Abari's motions.

3        MR. WESLEY:  I believe so, Your Honor.

4        THE COURT:  All right.  Thank you, Mr. Wesley.

5        Mr. Mattox, anything further on any of these

6    motions?

7        MR. MATTOX:  Not at this time, Your Honor.

8        THE COURT:  All right.  Thank you.

9        It has just been pointed out to me that December

10   25th is Christmas, which I had not thought of when I was

11   giving my deadlines, so I can give the Government some

12   additional time for the opposition, Mr. Wesley.

13       MR. WESLEY:  That would be appreciated, Your

14   Honor.  I was thinking I would just try to file it early,

15   but it did just occur to me I think we're closed Monday,

16   Tuesday, Wednesday, so I could use some additional time.

17       THE COURT:  Certainly.  Monday the 30th?

18       MR. WESLEY:  Thank you, Your Honor.

19       THE COURT:  All right.  So the Government's

20   opposition to any brief that you file on the 18th,

21   Mr. Mattox, will be due on Monday the 30th in view of the

22   holidays.

23       All right.  Let us move on to Mr. Hall's motions.

24       First of all, I have before me Government's

25   unopposed motion for discovery, docket number 87.  Still

1    unopposed?

2            MR. RIVERS:  Yes, Your Honor.

3            THE COURT:  All right.  So I'll go ahead and grant

4    docket 87, the motion for discovery.  And then I see we have

5    two motions -- no, three motions to suppress, dockets 116,

6    117 and 118, statements, admissions and answers, physical

7    evidence, and request for *Franks* hearing; and then motion to

8    suppress eye-witness identification.

9            Would the defendant like to present any additional

10   argument on these motions?

11           MR. RIVERS:  Your Honor, with respect to docket

12   116, the defense would -- and we both -- there's no formal

13   statement that was taken, and so we would agree that those

14   issues, whether it's excited utterance or other statements

15   made during the course of an arrest, are best left for

16   relevancy and trial.  So we would reserve those, I guess.

17           THE COURT:  Okay.  So you're withdrawing them at

18   this time?

19           MR. RIVERS:  Yes.

20           THE COURT:  With the ability to bring them at

21   trial, you say?

22           MR. RIVERS:  Right.

23           THE COURT:  All right.  Okay.  So that's docket

24   116 is withdrawn by the defendant.

25           And then 117.

1    MR. RIVERS:  Your Honor, we would join Mr. Abari's

2    counsel in their motions and would ask for the same

3    treatment, and so we would like to be apprised of the

4    additional discovery as well.  And I don't see issue with --

5    if we just treat it the same way.

6    THE COURT:  All right.  Mr. Wesley, does the

7    Government have any concern with providing the same

8    summaries and such to Mr. Hall's counsel?

9    MR. WESLEY:  No, Your Honor, that was actually my

10   intention.

11   THE COURT:  Okay.  Thank you.

12   And then 118, Mr. Rivers.

13   MR. RIVERS:  We can withdraw that one.  I'm not

14   aware of any eye-witness identification.

15   THE COURT:  All right.  So docket number 118 is

16   withdrawn by Mr. Hall.

17   Docket number 119, is there anything additional

18   that you would like to say with respect to docket 119, which

19   is the motion for disclosures of the existence and the

20   identity of confidential informants?

21   MR. RIVERS:  We would join Mr. Abari's counsel and

22   I would echo the sentiment that we have been provided with

23   10,000 plus pages of discovery, and perhaps the additional

24   discovery that the Government is going to provide us with

25   will help us, but there is scant evidence that my client was

1    involved in a conspiracy to actually distribute the fentanyl

2    or heroin.

3            So I understand what the law is in the Eighth

4    Circuit, but due process, I agree, trumps that when we've

5    got so much discovery but no way to really gel it.  And the

6    reason why it's important, especially in this case, it shows

7    us the strength of the Government's case and we might even

8    make a different decision about going forward or not going

9    forward.

10           THE COURT:  Okay.  Mr. Wesley, do you have any

11   additional response?

12           MR. WESLEY:  I know it's not the purpose of this

13   particular hearing but I just wish to reiterate, because I

14   have done this with all three defense attorneys, I've

15   pointed them directly to the state's evidence linking them

16   to the conspiracy; and in particular with Mr. Hall it's

17   quite strong because we have the seizure of his phone where

18   he has direct communications with Mr. Green regarding the

19   conspiracy, specific weights, specific amounts, and things

20   of that nature.

21           So I will offer formally on the record, anyone who

22   wants a reverse proffer, I'm willing to have that done.  I

23   have been repeatedly offering to the defense attorneys.  If

24   their clients do not understand the great weight of evidence

25   against them, I'm more than happy to offer them reverse

1     proffers individually explaining the evidence the Government

2     has against them.

3                THE COURT:  All right.

4                MR. RIVERS:  And we've asked for that and we

5     haven't had that.

6                THE COURT:  Will counsel be able to work out a

7     time for that reverse proffer then?

8                MR. WESLEY:  We will be able to do that.  There

9     were other issues that I believe prohibited doing the

10    reverse proffer, but I'm more than willing to do that, Your

11    Honor.

12               THE COURT:  Okay.  So now those issues have been

13    resolved?

14               MR. WESLEY:  I belive so, or they are still

15    pending.  Mr. Rivers and I can discuss that off the record.

16               THE COURT:  All right.

17               MR. WESLEY:  And the Government does not have

18    anything further to add to its response to the motion for

19    confidential informants.

20               THE COURT:  Okay.  And then docket number 120, the

21    motion for disclosure of post-conspiracy statements of

22    codefendants and unindicted co-conspirators.

23               Mr. Rivers, anything additional?

24               MR. RIVERS:  To the extent they exist, no, nothing

25    additional on that one, Your Honor.

1          THE COURT:  Okay.  Mr. Wesley, anything

2     additional?

3          MR. WESLEY:  Nothing additional, Your Honor.

4          THE COURT:  Are dockets 119, 120, those motions

5     regarding the confidential informants and the post-

6     conspiracy statements, Mr. Rivers, do you think you'll want

7     any additional briefing on those motions?

8          MR. RIVERS:  Probably not after a meet and confer,

9     Your Honor.

10          THE COURT:  Okay.  All right.  If you can update

11     me as to the status of those motions, 119 and 120, after

12     your meet and confer, let me know if you're withdrawing them

13     or not.

14          MR. RIVERS:  Thank you, Your Honor.

15          THE COURT:  Okay.  Thank you.

16          Docket number 120, motion to compel attorney for

17     Government to disclose evidence favorable to the defendant.

18     Mr. Rivers, in view of the Government's representations in

19     their brief, do you have any further concerns with respect

20     to the disclosures?

21          MR. RIVERS:  No.  I assume they will follow the

22     law, and I just want to make sure they do.

23          THE COURT:  All right.  Understood.  So in view of

24     the Government's representation that they will follow the

25     law and disclose the evidence as required, I'll deny it as

1     moot, but I'll note the representations in the order.

2           Docket number 122, motion for disclosure of

3     impeaching information.  Mr. Rivers, anything additional on

4     that?

5           MR. RIVERS:  No, Your Honor.

6           THE COURT:  Okay.  So docket number 122 I'll deny

7     as moot in view of the Government's representations that

8     they will comply with their obligations under the law.

9           Docket number 123 is the disclosures of the early

10    Jencks Act material.  I understand, Mr. Wesley, the

11    Government is agreeing to make that available three business

12    days before trial.

13          MR. WESLEY:  Correct, Your Honor.

14          THE COURT:  Okay.  Mr. Rivers, as you know, I

15    can't issue an order in that regard, but I will note the

16    Government's voluntary agreement to make those disclosures

17    three business days before trial.

18          Docket number 124, motion for discovery and

19    inspection of expert witness testimony.  Mr. Rivers, is

20    there anything you would like to add to your argument?

21          MR. RIVERS:  I believe the Government in their

22    response has agreed to that motion.

23          THE COURT:  Okay.  And, Mr. Wesley, I think in the

24    earlier motion along these lines, there was a proposal or I

25    ordered a 21 -- a disclosure of initial expert disclosures

1    21 days before trial and then 14 days for rebuttals.

2             MR. WESLEY:  Now that you mention it, I do recall

3    that, Your Honor.  I am fine with 21 days rather than the 14

4    I put in my memo.

5             THE COURT:  Okay.  So we'll have the initial

6    expert disclosures for both sides due 21 days before trial,

7    Mr. Rivers, and then rebuttal will be due 14 days before

8    trial, all right?

9             MR. RIVERS:  Yes, Your Honor.

10            THE COURT:  Okay.  Motion for disclosure of 404(b)

11   evidence, docket number 125.  I think the Government has

12   said they would disclose that 14 days before trial.  Is that

13   right, Mr. Wesley?

14            MR. WESLEY:  Yes, Your Honor.

15            THE COURT:  All right.  Mr. Rivers, is that

16   satisfactory?

17            MR. RIVERS:  It is.

18            THE COURT:  Okay.  So 125 will be granted insofar

19   as those disclosures will be due 14 days before trial.

20            Docket number 126, the motion to sever defendant,

21   Mr. Rivers, is there anything you would like to add to that?

22            MR. RIVERS:  Well, Your Honor, I don't -- at this

23   point I don't see any pointing the fingers or statements in

24   violation of *Bruton*, but -- and perhaps once I get

25   additional discovery from the Government and a reverse

1    proffer, but that's what we would request.

2            THE COURT:  Okay.  Right now I'm going to deny the

3    motion to sever, but I'm denying it without prejudice to

4    your ability to bring it again should you find -- have an

5    additional reason that you'd like to set forth.  All right?

6            MR. RIVERS:  Yes, Your Honor.

7            THE COURT:  Okay.  And then motion to retain rough

8    notes by the Government agents.

9            Mr. Wesley, I understand the Government has

10   already instructed its agents to do that based on your

11   response?

12           MR. WESLEY:  Correct, Your Honor.

13           THE COURT:  All right.  So docket number 127 is

14   denied as moot in view of that representation.

15           And I think that is it for Mr. Hall.  Is there

16   anything else, Mr. Rivers?

17           MR. RIVERS:  No, Your Honor.

18           THE COURT:  All right.  Thank you.

19           And we will move on to Mr. Green.

20           MR. ROGOSHESKE:  Good morning, Your Honor.

21           THE COURT:  Good morning, Mr. Rogosheske.

22           MR. ROGOSHESKE:  Correct.

23           THE COURT:  First of all, there is a Government's

24   motion for discovery, docket number 81, and I understand

25   that's not opposed by Mr. Green; is that correct?

1          MR. ROGOSHESKE:  Much of what you said before

2     pertains to me as well.  Mr. Wesley and I have had numerous

3     conversations.  Part of the problem is some of the computer

4     documents that they gave us don't open, and those are some

5     of the conversations that he's talking about.

6          So with this discovery that he's going to give us

7     with respect to the informant and his reverse proffer, I

8     think we can get through some of that additional discovery.

9     But that's our problem as well because the main issue that

10    we talked about is with respect to the search warrant, and

11    we talked about -- my talking about a request for a *Franks*

12    hearing, that's about the only real issue that we have.  The

13    other issues we've resolved.

14          THE COURT:  Okay.  All right.  So just to make a

15    clear record, I'll run down the list just to be clear.  So

16    docket 81, the Government's motion for discovery is

17    unopposed so I will be granting that.

18          MR. ROGOSHESKE:  Right.

19          THE COURT:  All right.  So that motion is granted.

20    The motion to suppress -- excuse me, suppress the search

21    warrant, docket 89, is that still an active motion for

22    Mr. Green?

23          MR. ROGOSHESKE:  That's what we'd like to

24    basically discuss at greater length.

25          THE COURT:  We can defer that one.  And then the

1    motion for pretrial determination of admissibility of Rule

2    802(d)(2)(E) statements.  Is there anything additional you'd

3    like to say about that?

4              MR. ROGOSHESKE:  No, Your Honor.

5              THE COURT:  Mr. Wesley, anything additional you

6    would like to say about docket 90?

7              MR. WESLEY:  No, Your Honor.  Thank you.

8              THE COURT:  And docket 91, production of *Giglio*

9    material.  Mr. Rogosheske, anything additional you would

10   like to say about that?

11             MR. ROGOSHESKE:  No, Your Honor.

12             THE COURT:  So that in view of the Government's

13   representations that they will comply with their

14   obligations, I'll deny it as moot and the order will note

15   the representations of the Government.

16             Motion for disclosure of post-conspiracy

17   statements of codefendants, 92.  I assume you will look at

18   the disclosures that are made on the 11th and decide if you

19   want to file additional briefing.

20             MR. ROGOSHESKE:  Correct.

21             THE COURT:  Okay.  Motion for notification of

22   evidence of other criminal activity of defendant, docket 93.

23   Are you satisfied with the Government's offer to make that

24   available 14 days in advance?

25             MR. ROGOSHESKE:  That's fine.

1              THE COURT:  Okay.  Motion for disclosure of Jencks

2     Act material, the Government is going to voluntarily produce

3     that at least three business days before trial.

4              MR. ROGOSHESKE:  We have the same kind of

5     complaint as Mr. Mattox does, but we understand what the --

6     we're going to work through it.

7              THE COURT:  Okay.  All right.

8              Docket 95, motion for disclosure of and access to

9     confidential informants and cooperating defendants.  You may

10    want to submit additional briefing on that in view of the

11    submissions.

12             MR. ROGOSHESKE:  Right.  We'll see what he

13    proposes.

14             THE COURT:  Okay.  So that your deadline would be

15    the 18th for any additional briefing.

16             MR. ROGOSHESKE:  Thank you, Your Honor.

17             THE COURT:  And that also applies for docket

18    number 92.

19             MR. ROGOSHESKE:  Thank you.

20             THE COURT:  Docket number 96, motion for

21    Government witness list.  I'm trying to understand actually

22    if there's still a dispute with respect to this motion.

23    Mr. Rogosheske?

24             MR. ROGOSHESKE:  Well, I think we can withdraw

25    that.  We'll work it out.

1          THE COURT:  Okay.  Motion for counsel to

2    participate in voir dire.  I'm going to deny that because I

3    think that's better decided by the trial judge, so I'm

4    denying it without ability for you to bring it again in

5    front of Judge Davis.

6          MR. ROGOSHESKE:  That's fine.

7          THE COURT:  All right.  Motion to compel

8    Government to disclose wire and electronic communications,

9    docket 98.  Is that still a motion that's live?

10         MR. ROGOSHESKE:  That's what we're working

11   through.  That's the problem with accessing the computer and

12   there's also some other phone records that we haven't even

13   been provided, and the Government hasn't even seen or looked

14   at itself.  So we're going to work through that.  I think we

15   can work through that if we just stay that motion, maybe

16   stay it until the 18th.

17         THE COURT:  Until the 18th?

18         MR. ROGOSHESKE:  Yeah.

19         THE COURT:  Okay.  If I -- if you can let me know

20   on the 18th whether or not you still view docket 98 as a

21   live motion, that would be great.

22         MR. ROGOSHESKE:  I think we'll work through that.

23         THE COURT:  Okay.  If I don't hear from you by the

24   18th, I'll assume you have worked through it.

25         MR. ROGOSHESKE:  All right.

1          THE COURT:  99, motion to suppress evidence

2     obtained by means of electronic surveillance.

3          MR. ROGOSHESKE:  Same type of issue.

4          THE COURT:  Same issue?  All right.  So I'll look

5     for something from you on the 18th then.

6          MR. ROGOSHESKE:  Thank you, Your Honor.

7          THE COURT:  Docket 100, motion to compel

8     Government attorney to disclose evidence favorable to the

9     defendant.  In view of the Government's representations, is

10    this still a live issue?

11         MR. ROGOSHESKE:  No, Your Honor.

12         THE COURT:  All right.  I'll deny it as moot then

13    in view of those representations.

14         MR. ROGOSHESKE:  Okay.

15         THE COURT:  Motion to sever defendant, docket 101,

16    I will deny that at this point in time, but if you feel that

17    you have a reason to bring it up in the future, that's fine.

18         MR. ROGOSHESKE:  That's why we need more

19    discovery.

20         THE COURT:  All right.  And then 107, motion for

21    disclosure to disclose and make informants and cooperating

22    defendants available for interviews.  Is this another motion

23    that you will want additional briefing on?

24         MR. ROGOSHESKE:  Yes.

25         THE COURT:  Okay.  So your deadline will be the

1      18th.

2                MR. ROGOSHESKE:  Thank you, Your Honor.

3                THE COURT:  And then lastly, motion to amend,

4      correct docket 89, the motion to suppress, I'll grant docket

5      141 because I'd like to have a complete record.  So that

6      motion is granted and we can proceed now with dockets

7      89/141.  Is that the only motion that we still need to

8      address?

9                MR. ROGOSHESKE:  Correct, Your Honor.  What

10     Mr. Wesley and I talked about is -- what we have presented

11     to Mr. Wesley with our submissions is that there could be

12     some real errors in the search warrant.  And so what we

13     thought we would do is I had subpoenaed -- well, I didn't

14     subpoena but I have the Defendant's mother and his son to

15     testify.  They went to the wrong courthouse and so hopefully

16     they will be here.  But what we had talked about is I was

17     going to make an offer of proof of why I think we need a

18     *Franks* hearing.

19                The main reason, and as you can see, some of the

20     evidence we presented in the docket number is that my client

21     wasn't in Chicago.  They have this electronic surveillance

22     placing him in Chicago on April 6th and 7th and the 24th.

23     We've submitted evidence that he was at a pawn shop on the

24     24th and we gave them a pawn ticket where he signed.

25                So that kind of corroborates what we're talking

1    about with respect to the phone numbers.  They are saying

2    Mr. Green has these phone numbers, and so then they can ping

3    them off of these electronic surveillances.  We're saying

4    that he doesn't have those phone numbers.

5           And what we would do is ask the Court -- we have

6    Googled, just like the officer said he Googled in the search

7    warrant.  He said, Hey, I looked at a public database and

8    this phone number relates to Minnie Lloyd and the defendant

9    lives with Minnie Lloyd and she's on his Facebook.  And he

10   implies that the Facebook also indicates this phone number

11   that is related to Green.

12          Well, we've got his Google Facebook is right there

13   for everybody to see.  And the problem with the officer's

14   statement with respect to that Google Facebook is he's in

15   prison.  He was in prison for the whole year of '18 and '17.

16   And so it's just -- and you look at the Google Facebook --

17   and we've printed it and given it to Mr. Wesley -- there is

18   nothing on there that says there's a phone number related

19   to -- to Mr. Green.  And it's this 612-651-1225.  And so we

20   are going to prove with the testimony of his mother on his

21   son that he wasn't in Chicago on April 6th or 7th either.

22   He was here in Minneapolis.

23          And so -- and we were going to also, as you saw in

24   the submissions, there's a portion in here where a

25   confidential reliable informant says that he saw this

1    Porsche that is attributable to my client come up and hand a

2    packet, and then this confidential informant and everybody

3    purchased cocaine from a fellow by the name of Black.

4         Well, the Porsche, as we showed you, was in a

5    shop, Wayzata Porsche dealership, on that date.  So the

6    confidential reliable informant is suspect, at least, from

7    the evidence that we've presented with respect to the repair

8    work.  So that has some problems.

9         But one of the big problems that we have is his

10   son was going to be here, who is 18, and he was arrested

11   with him on the date of this search warrant.  And if you

12   take a look at the search warrant, the application was

13   signed at about 11:30 and the judge issued the search

14   warrant at about 11:58.  He was stopped at 11:33.  That's in

15   the discovery that the Government has provided us in a

16   police report, and it says that the time was 11:33.  So his

17   son was going to testify that they were stopped at 11:33,

18   and that would be our offer of proof.  And his son would

19   also testify that when they were in the squad car

20   handcuffed, that that's when the search warrant came over

21   the printer in the officer's car.

22        They then proceeded to the Burnsville address, and

23   when they got to the Burnsville address, the police officers

24   were already executing the search warrant.  So it seems that

25   we have some evidence, or at least an offer of proof of some

1    evidence, that contradicts some of the key elements of the

2    search warrant.

3          THE COURT:  Are your witnesses coming over to the

4    courthouse now?

5          MR. ROGOSHESKE:  Yeah, they are not here yet, but

6    I talked to them at 9 o'clock and they were just approaching

7    the door.  And I said if you get over here by 10:00, 10:30,

8    we would be all right.  But so with those type of

9    submissions or requests, I think maybe a *Franks* hearing

10   might be appropriate to get Jason Schmidt, the applicant, to

11   come forward and testify.

12         And maybe we could handle it in a situation like

13   with Mr. Mattox, if we get this more information and this

14   other information, maybe we could address that at a later

15   date.  I don't know with the discovery, if we get the

16   discovery, we might come to some resolution of these issues.

17         THE COURT:  Okay.  So I understand your offer of

18   proof.  Right now I don't have anything before me

19   evidentiarily, including the warrant itself.

20         MR. ROGOSHESKE:  Okay.

21         THE COURT:  So I guess we can do a couple of

22   things.  We have probably a little time if you want to see

23   if your witnesses have shown up so they can testify, or you

24   can -- I'll hear from Mr. Wesley as well.  Obviously he gets

25   to make a response to the argument and the offer of proof,

1     and we can proceed that way as well.

2              Mr. Wesley, what are your thoughts?

3              MR. WESLEY:  Your Honor, I don't even think we

4     need to get to testimony in this case.  The default plane

5     that we start at with Fourth Amendment issues and search

6     warrants is you look at the four corners of the search

7     warrant.  And so looking at the four corners of the search

8     warrant you determine whether there's probable cause.

9              I do have a copy of the search warrant.  I did

10    forget which number we were at at the last motions hearing,

11    so I could mark this one as the next number if we can figure

12    that out during a break, hopefully.  I'm relying on your

13    clerks here.

14             But what Mr. Rogosheske is doing is he's

15    conflating several issues and trying to make it look like

16    these are *Franks* issues.  When Your Honor does see the

17    affidavit, it's indicating that they did have a basically

18    ping warrant up on this 1225 number, which is attributed to

19    Mr. Green, not by Google but by CLEAR Search, which

20    Mr. Rogosheske doesn't have access to.  It's available to

21    law enforcement.  It's based on utility records and various

22    other things where that number was linked to the Burnsville

23    address, not necessarily Minnie Lloyd who rents that

24    address, but to that address.  So I wanted to correct that

25    statement that Mr. Rogosheske made, as well.

1          It's also connected to Mr. Green based on a

2     confidential informant who was arrested themselves and

3     during a *Scales* interview indicated a drug transaction for

4     heroin that they had engaged in; and in order to communicate

5     with the person Stunna, who has been identified as Kevin

6     Green, they used that number 1225.

7          So with this ping warrant up, Officer Schmidt was

8     putting that information into the warrant.  So when it says

9     that information means that phone was in Chicago, people can

10     testify that Mr. Green was here, Mr. Green was anywhere else

11     in the world aside from Chicago, and it doesn't matter

12     because it doesn't make the statement false in the warrant.

13     The statements in the warrants are still true.

14          And even if they weren't true or misleading, they

15     are not material to the finding in the warrant because the

16     warrant is for a house, not for anywhere having to do with

17     Chicago, not for anywhere about his whereabouts during the

18     several months this investigation was pending.  This is

19     background information that Officer Schmidt was giving to

20     the judge.  That information could be stricken about him

21     going to Chicago and there would still be probable cause in

22     this warrant.

23          So, in summary, it's the Government's position

24     that testimony isn't needed because it's completely

25     irrelevant where Mr. Green was on April 6th, 7th and 24th

1    when the warrant was executed at the Burnsville address on

2    July 8th.

3              THE COURT:  Okay.  In view of that, do you have

4    any objection to me relying on Mr. Rogosheske's offer of

5    proof rather than witness testimony?

6              MR. WESLEY:  Well, I suppose not because the

7    Government's position is going to be the same.  I suppose I

8    would have the opportunity to test the credibility of the

9    witnesses through cross-examination if they testified, but I

10   do not have a problem with the Court relying on there would

11   be testimony from family members indicating that he was in

12   Minnesota on those dates.

13             THE COURT:  Okay.

14             MR. WESLEY:  He's indicated to me that's what they

15   would testify to, and I'll take it that's what they would

16   say absent cross-examination.

17             THE COURT:  All right.  Go ahead, Mr. Rogosheske.

18             MR. ROGOSHESKE:  Judge, I just want to point out

19   that in the search warrant what this informant in a *Scales*

20   interview, which we haven't been provided with, indicated a

21   phone number of 612-265-1225.  Then the officer says, We go

22   to the Facebook page and we see pictures of Green and we see

23   pictures of him in a rose-colored Porsche SUV which

24   corroborates his sales.

25             When you look at the Google Facebook page of

1    Mr. Green there's no rose-colored Porsche, with him in a

2    rose-colored Porsche in his Google Facebook.  And again, he

3    was in prison for an entire year prior to him looking at the

4    Facebook.  So I think that goes to the credibility of the

5    officer.

6            In addition, the pinging, if you go to the

7    pinging, the pinging is now on a new phone number.  It's

8    612-263-1225.  So it's not the same phone number.  And they

9    are saying that Mr. Green is going to Chicago and he turns

10   off his phone when he goes through other cities and that's

11   indicative of a drug dealer and he only stays in Chicago for

12   a couple of days.

13           So what happens is you're pinging on a wrong phone

14   number, you're having the affiant say rose-colored Porsche

15   and that corroborates the *Scales* interview, and the phone

16   number comes off a public search database.  It doesn't say

17   this is only available to law enforcement.  It says it's a

18   public search database.  When we run the public search

19   database, it comes back to people in Eagan and Prior Lake.

20           So I think that that contradicts what the officer

21   is saying, or at least leads to some probability that maybe

22   there's some misstatements in this warrant.

23           In addition, I think when somebody says here's a

24   confidential reliable informant and he is purchasing cocaine

25   from Black and this rose-colored Porsche drives up and gives

1    a big packet of information or packet of heroin to this

2    Black individual, who then sells to the confidential

3    reliable informant, and the Porsche is in the garage on

4    March 4th, I don't -- I think we have to get -- I think that

5    starts to tell you that maybe we've got some things that are

6    in error here.  But more importantly, the son's testimony

7    would be that this search warrant is coming over the printer

8    at the time, and this search warrant is for Mr. Green as

9    well as the house.

10          So they are arresting Mr. Green, taking him into

11    custody prior to even the judge reviewing the warrant.  So I

12    think that kind of testimony and that offer of proof might

13    get us to at least have Mr. Schmidt come up and explain some

14    of those discrepancies.

15          THE COURT:  Okay.  All right.  Thank you.

16          Anything further, Mr. Wesley?

17          MR. WESLEY:  Your Honor, I would strongly

18    encourage the Court to review the warrant first to -- and

19    you can determine yourself or review for yourself how

20    secondary these issues are to the necessary probable cause

21    determination that's required for a *Franks* hearing.

22          With the Facebook, just a side note on the

23    Facebook, the copy that he provided me immediately before

24    the hearing, the only thing I was able to see on it was that

25    it was printed December 3rd, so it's not the same Facebook

1    that the officer would have looked at.

2              But in any event, I think the most important thing

3    to happen right now is for the Court to review this search

4    warrant.  If I were to mark it with today's date and Exhibit

5    1, unless we've determined where we left off at for the

6    exhibit numbers, would that be acceptable?

7              THE COURT:  Yeah, you can mark it as Exhibit 7.

8              MR. WESLEY:  Exhibit 7.  Thank you very much.

9              THE COURT:  Thank you.

10             MR. WESLEY:  And then I would offer that, and

11   that's a copy of the search warrant that was executed on

12   July 8th of 2019.

13             MR. ROGOSHESKE:  I have no objection to that.

14             THE COURT:  Okay.  Thank you.  Exhibit 7 is

15   admitted.  And thank you, Mr. Wesley.

16             MR. ROGOSHESKE:  Judge, I just want to point out,

17   he was in prison for a whole year when they are accessing

18   this Facebook sometime.  I don't know when they accessed it.

19             THE COURT:  Okay.  Well, with regard to this

20   motion, docket 89, your motion to suppress the results of

21   the search warrant, you know, I would want additional

22   briefing on that unless -- well, Mr. Rogosheske, I think you

23   should go ahead and file a supplemental brief with respect

24   to this as well.

25             MR. ROGOSHESKE:  Okay.  Do you want me to do that

1    by the 18th as well?

2         THE COURT:  Well, let me check on when the

3    transcript will be available, just to --

4         (Discussion held off the record.)

5         THE COURT:  Will either side be ordering the

6    transcript today?  Yep?

7         MR. ROGOSHESKE:  Yeah, that's fine.

8         THE COURT:  All right.  If it's ordered today it

9    will be available in 14 days, unless you want to pay for a

10   7-day rush.

11        MR. ROGOSHESKE:  No.

12        THE COURT:  Okay, 14 days.  So your brief will be

13   due seven days after the transcript is ready, but I believe

14   that's also the 25th.  Fourteen days would be the 18th.

15   That puts you at the 25th, excuse me.

16        Okay.  Your brief with respect to your motion to

17   suppress, docket number 89, will be due on January 8th.

18        Mr. Wesley, how long would you like for your

19   rebuttal?

20        MR. WESLEY:  I missed the date.  I would like

21   seven days from the date the defense brief is due.

22        THE COURT:  Okay.  Defense brief is due on the

23   8th.  Yours will be due on January 15th.

24        MR. WESLEY:  Thank you, Your Honor.

25        THE COURT:  All right.  And anything further with

1      respect to these motions?

2                 MR. ROGOSHESKE:  No, Your Honor.

3                 MR. WESLEY:  Two things, Your Honor.

4      Mr. Rogosheske did provide me with the receipt, a receipt

5      from a pawn shop or some sort of document.  I wouldn't even

6      call it a receipt.  And also what looks to me to be a quote

7      from a dealership that he's informed me is from the Wayzata

8      dealership.  Rather than have him rely on argument as to

9      what those mean, I would like those to be submitted as

10     exhibits for the Court to see.

11                I would normally have some objection to foundation

12     based on sort of the quality of these documents.  They don't

13     seem to be indicative of anything to me when I received

14     them.  They don't indicate that Kevin Green himself obtained

15     the receipt; that he was in on that date or whether he made

16     a phone call or placed an order; whether it was a quote for

17     the -- regarding the Porsche dealership.  But I think Your

18     Honor should look at those documents themselves to determine

19     if they meet that high threshold for the *Franks* hearing.

20                And then finally I do think that -- I forgot there

21     was a motion regarding -- I thought there was a motion to

22     suppress the search warrant for Mr. Hall.  Was that not

23     included?

24                MR. RIVERS:  We talked about that.

25                MR. WESLEY:  I would like to submit then as

1    Exhibit Number 9 the four corners for that search warrant.

2    I don't think that's been done in a prior motions hearing.

3              THE COURT:  Any objection?

4              MR. RIVERS:  No objection.

5              THE COURT:  Okay.  We'll receive exhibit number --

6    I think it should be number 8, actually, because we just

7    marked this one 7.

8              MR. WESLEY:  Thank you, Your Honor.  It's marked

9    Exhibit 8.

10             THE COURT:  And so, Mr. Rivers, you're motion to

11   suppress, I'd also like additional briefing on that.

12             MR. RIVERS:  Yes, Your Honor.

13             THE COURT:  And I'll give you the same deadlines

14   for that as well.  So the 8th for your brief, the 15th for

15   the Government's opposition.

16             And then with respect to the --

17             MR. ROGOSHESKE:  Thank you, Your Honor.

18             THE COURT:  With respect to the receipt and the

19   printout from the dealership, those were attached as

20   exhibits to one of the motions, Mr. Wesley, so I have them

21   before me but they haven't been formally offered.  Will the

22   defendant be offering them?

23             MR. ROGOSHESKE:  Defense will be offering them,

24   Your Honor.

25             THE COURT:  Do you have copies right now?

```
1              MR. ROGOSHESKE:  What's that?

2              THE COURT:  Do you have copies right now?

3              MR. ROGOSHESKE:  Those are copies.  Yeah, I can

4      give those to you.

5              THE COURT:  Okay.

6              MR. WESLEY:  Your Honor, I have paper copies of

7      those right now.

8              THE COURT:  So let's mark those as Exhibits 9 and

9      10.

10             MR. WESLEY:  They do have hole punches in them if

11     the Court doesn't --

12             THE COURT:  Sure.  Hang on with those numbers for

13     a second, Mr. Wesley.

14             Mr. Rivers, what I propose is that we mark these

15     with your individual defendant's name, Mr. Green, so Green

16     Exhibit 1 and 2.  Mr. Rivers.

17             MR. RIVERS:  I'm sorry?

18             MR. WESLEY:  You indicated Mr. Rivers, Your Honor,

19     instead of Mr. Rogosheske.

20             THE COURT:  I'm sorry.  Mr. Rogosheske, we'll mark

21     them with Green Exhibit 1 and 2.

22             MR. ROGOSHESKE:  That's fine, Your Honor.

23             MR. WESLEY:  And just for the record, I'm

24     assisting Mr. Rogosheske because I'm the one with the

25     stickers and the pen here.
```

1          THE COURT:  All right.  The cooperation of counsel

2      is always appreciated.

3          MR. ROGOSHESKE:  Thank you, Your Honor.

4          MR. WESLEY:  And I can walk them up.  We do need a

5      staple on Exhibit 2 because it's multiple pages.

6          THE COURT:  Okay.  Since the Government's

7      assisting with stickers, I assume there's no objection.

8          MR. WESLEY:  I'm indicating it's "Government

9      Exhibit" but it is Mr. Rogosheske's Exhibit.  I want that to

10     be clear for the record.

11         THE COURT:  All right.

12         MR. WESLEY:  I'm not objecting to the Court

13     considering those for the purposes of determining the *Franks*

14     hearing.

15         THE COURT:  All right.  What I'll do is I'll cross

16     out "Government" on those stickers.  So I've now crossed

17     that out, so Green Exhibit 1 and Green Exhibit 2 are

18     admitted for purposes of this motion to suppress.

19         MR. WESLEY:  Thank you, Your Honor.

20         MR. ROGOSHESKE:  Thank you, Your Honor.

21         THE COURT:  All right.  And that will be subject

22     to the same briefing schedule.  The two motions to suppress

23     will be subject to the same briefing schedule.

24         Now, we've had a fair bit of discussion about

25     additional briefing on certain motions and I want to cover

1      which motions those are.

2           Based on my notes, docket numbers 102, 103 and 104

3      relating to Mr. Abari, the Government will make certain

4      disclosures or provide summaries to all counsel on the 8th,

5      and then -- sorry, not on the 8th -- by the 11th.  And then

6      we'll have -- if the defendants want to submit additional

7      briefing on that it will be due on the 18th, and then the

8      Government's response would be due on December 30th.

9           If I don't see additional briefing with respect to

10     those dockets, I will be treating them as limited to the --

11     well, I will treat them as withdrawn if I don't see

12     additional briefing on dockets 103, 102 and 104.

13          With respect to Mr. Hall, that's dockets 116, 117,

14     119 and 120, and same schedule there.  The Government will

15     make its disclosures and summaries by the 11th.  Additional

16     briefs by the defendant will be due on the 18th, with the

17     Government's response due on the 30th.  And again, if I

18     don't see additional briefing with respect to those motions,

19     I'll view them as withdrawn.

20          And then finally with respect to dockets 92, 95,

21     96 and 107 for Mr. Green, same situation.  If I don't see

22     additional briefing on those by the 18th from the

23     defendants, I'll view them as withdrawn.

24          And to the extent you can address the specific

25     arguments raised today in the briefing, that would be much

1     appreciated.

2              Okay.  Is there anything further from the

3     Government with respect to this motion hearing?

4              MR. WESLEY:  I was trying to keep up with the

5     numbers, Your Honor, but just one thing I noted is I believe

6     docket 116 was actually withdrawn because that relates to

7     the motion to suppress Mr. Hall's statements.

8              THE COURT:  Okay.  Thank you.

9              Is that correct, Mr. Rivers?

10             MR. RIVERS:  Yes, Your Honor.

11             THE COURT:  Okay.  Thank you.  So that does not

12    apply to 116.

13             Any other corrections or friendly amendments?

14    Mr. Mattox.

15             MR. MATTOX:  Yes, Your Honor.  Two things.

16    There's apparently a no contact order from the Court, I

17    believe, involving the three defendants.  They are here

18    together.  They have had discussions together.  I see no

19    point for that to be continuing, so I would ask that to be

20    withdrawn, Your Honor.  I think they ought to have contact

21    with each other since there seems to be mutuality of defense

22    in this matter.

23             And the second thing is I have been considering

24    the disclosure of the informants, codefendants, cooperating

25    witnesses, and the Court indicated that it stuck with the

1    three-day rule based on the Eighth Circuit, and it occurred

2    to me that the Government is going to be interviewing

3    witnesses the week before the trial, Your Honor.  And I

4    would ask the Court, it's not a proper remedy, I don't think

5    it's an adequate remedy, but I would ask the Court to

6    consider ordering the Government to make all those

7    witnesses, cooperating witnesses, informants, codefendants

8    not charged, available for an interview at their office

9    three days before the trial, Your Honor.  They will be

10   meeting with them.  Why can't we meet with them at the same

11   time?

12            Again, it's not an adequate remedy given what may

13   come out during the discussions, but at least it's better

14   than trying to run around Minneapolis and St. Paul trying to

15   find them, Your Honor.  Thank you.

16            THE COURT:  Okay.  Thank you, Mr. Mattox.

17            Mr. Wesley.

18            MR. WESLEY:  Very respectfully, Your Honor, I've

19   indicated what the law is and I do not believe that the

20   Court can order the Government to do that.

21            THE COURT:  To make them available on a specific

22   date?

23            MR. WESLEY:  Correct, Your Honor.  I believe it

24   falls under the Jencks category that I have already

25   addressed in earlier motions.  I will discuss this further

1    with defense attorneys, and I'll consider doing this

2    voluntarily as I am in providing the Jencks materials three

3    days before trial, because of course the Government does not

4    want to have things delayed during trial either; and I need

5    to balance this against the Government's interest in

6    protecting the witnesses when we believe there's credible

7    threats out there.

8           So I will consider it and discuss that with them,

9    but I would respectfully ask the Court not to order the

10   Government to meet with the witnesses or to allow the

11   defense to meet with any witnesses at any particular times.

12          THE COURT:  All right.  And then with respect to

13   the no contact order?

14          MR. WESLEY:  Oh, yes, Your Honor.  With respect to

15   the no contact order, I would ask that that remain in place.

16   Obviously there's logistical issues with having them in the

17   courtroom at the same time and transporting them and things

18   of that nature; but to have the three defendants have

19   contact with each other at the jail, I think there's still

20   valid reasons to keep that no contact order in place.

21          Specifically, the Court has observed Mr. Abari's

22   behavior in court and I believe -- I'm actually not sure if

23   the Court has been made aware of his behavior in the jail or

24   during transport, but essentially for safety and security

25   reasons alone, I think the jail has an interest in keeping

1    these three codefendants apart.

2              THE COURT:  All right.  Thank you.

3              Anything further, Mr. Mattox?

4              MR. MATTOX:  No, Your Honor.

5              THE COURT:  Mr. Rivers.

6              MR. RIVERS:  Your Honor, one quick -- as far as

7    the keep separate order, I would join Mr. Mattox

8    reluctantly.  The -- my client has had an issue with viewing

9    his discovery.  The way we do it nowadays, I guess, is we

10   give the jail a thumb drive and then they can access their

11   discovery that way.  That way they don't have it in their

12   cell and they don't have to worry about somebody looking at

13   their discovery and becoming an informant based on what

14   they've read in their discovery.

15             However, they've put my client's thumb drive that

16   I gave him in his property instead of keeping it where it's

17   supposed to be, and for whatever reason he doesn't have

18   access to it.  So I would ask for an order allowing him

19   access to his discovery.

20             THE COURT:  Where is it being put now?

21             MR. RIVERS:  In his property as opposed to -- I

22   think they hold them like in a different part of the jail,

23   so that you can ask to go see your discovery and then they

24   give you access to a computer and you plug in a thumb drive

25   and you have free access to work on your case.

1         THE COURT:  All right.  Mr. Rogosheske.

2         MR. ROGOSHESKE:  Judge, I just want to clarify

3    with respect to the search warrant, it's not due until the

4    8th of January, correct?

5         THE COURT:  That's correct.

6         MR. ROGOSHESKE:  Okay.

7         THE COURT:  That's right.

8         Anything further, Mr. Rogosheske?  Go ahead if you

9    need to consult with your client, that's fine.

10        MR. ROGOSHESKE:  No, Your Honor.

11        (Pause in proceedings.)

12        THE COURT:  All right.  Mr. Rivers, with respect

13   to your request regarding the thumb drive, I think -- what

14   I'm going to do is if the Government can reproduce those

15   documents on a fresh thumb drive that can be provided to you

16   and treated consistent with whatever the requirements are,

17   we'll try that first.

18        So, Mr. Wesley, if you can reproduce the thumb

19   drive?  I understand this isn't the Government's issue, but

20   if you can do that.

21        MR. WESLEY:  If I could have a moment?

22        THE COURT:  Go ahead.

23        (Discussion held off the record.)

24        MR. WESLEY:  Your Honor, I can do that, but I know

25   that there's the protective orders as it relates to the body

1    cameras, and I don't know what Mr. Rivers had put on the

2    thumb drive, so I think that would be better for him to

3    provide to his client, the discovery.

4              THE COURT:  I see.

5              MR. WESLEY:  It's all electronic so it's not an

6    issue of making copies, and I guess I can a provide a thumb

7    drive if Mr. Rivers doesn't have one; but I think it's

8    better suited for Mr. Rivers to just recopy it and give it.

9              Or, in the alternative, I would be also willing to

10   call up Sherburne and try to sort out what is going on there

11   because I think it should be an easy fix to take the drive

12   from his property, keep it where they normally keep it -- I

13   don't understand the process, but I do know they have

14   computers there.  So maybe it can be sorted out that way.

15             THE COURT:  Okay.

16             MR. RIVERS:  The reason I bring it up, this is the

17   second client that I've had that has had this issue.

18             THE COURT:  Is there a problem that --

19             (Discussion held off the record.)

20             MR. WESLEY:  Your Honor, I am being informed by

21   one of the marshals that they can just arrange to have it

22   removed from Mr. Hall's property and brought to the

23   sergeant's desk where it's typically kept.

24             THE COURT:  All right.  Why don't you see if you

25   can sort that out.  It would be greatly appreciated,

1      Mr. Wesley, if you and the marshal can figure that out so

2      that he can access his materials.

3              MR. WESLEY:  I'll work it out with Mr. Rivers,

4      Your Honor.

5              THE COURT:  All right.  Thank you very much.

6              Is there anything further from the Government?

7              MR. WESLEY:  No, Your Honor.

8              THE COURT:  Anything further from any of the

9      defendants?

10             MR. ROGOSHESKE:  No, Your Honor.

11             THE COURT:  Okay.  And then finally with respect

12     to the no contact order, that remains in place.  I will

13     consider the request of defendants, but it currently remains

14     in place.

15             And with respect to the cooperating witness

16     request made by Mr. Mattox on behalf of Mr. Abari, I'll take

17     that under advisement along with the remaining motions.

18             We're in recess.

19             (Court adjourned at 10:52 a.m.)

20                         *       *       *

21             I, Carla R. Bebault, certify that the foregoing is

22     a correct transcript from the record of proceedings in the

23     above-entitled matter.

24             Certified by:  s/Carla R. Bebault
                               Carla Bebault, RMR, CRR, FCRR
25